ANNA K. ROULHAC, Executrix, v. JOHN MILLER and others.

*Appeal—Certiorari.*

1. A *certiorari* will be granted where the party is in no default, but has been diligent in his efforts to take an appeal.

ROULHAC *v.* MILLER.

2. Where the papers in a case were sent to the judge to be returned after the expiration of the term, with his judgment therein : *Held,* that the party intending to appeal, if the judgment should be against him, and who made repeated enquiries of the clerk of the court about the return of the papers, and lost his right of appeal by reason of the lack of information of the clerk as to the time when the same were filed, is entitled to the writ of *certiorari.*

3. In such case it must appear that there is reasonable ground for the appeal that was lost—not that the cause therefor would avail the party in this court.

4. The right to the writ is not affected by the denial of the petitioner's motion for an injunction against collecting the judgment, as that motion was made in a separate and distinct action from the one in which the petitioner desired to appeal.

(*Murray* v. *Shanklin,* 4 Dev. & Bat., 276; *Howerton* v. *Henderson,* 86 N. C., 718; *Parker* v. *Railroad,* 84 N. C., 118; *Syme* v. *Broughton, Ib.,* 114; *Parker* v. *Bledsoe,* 87 N. C., 221; *Grant* v. *Moore,* 88 N. C., 77: *Wynne* v. *Prairie,* 86 N. C., 73; *Rogers* v. *Moore, Ib.,* 85; *Williams* v. *Rockwell,* 64 N. C., 325, cited and approved).

PETITION for *certiorari* heard at October Term, 1883, of THE SUPREME COURT.

From the petition and answer, and the affidavits filed on both sides, these material facts sufficiently appear:

The plaintiff, executrix, brought an action against Wm. Garl Brown in the superior court of Orange county, and at spring term, 1882, obtained judgment against him for $504, with interest, and for costs. In this action she applied for and obtained a warrant of arrest, under which the said Brown was arrested; and at said spring term, John Miller and John Gatling, the petitioners for the writ of *certiorari,* became his bail, and executed a proper undertaking in the sum of $800 on the 7th of April, 1882. Thereafter, an execution issued upon said judgment, which was returned unsatisfied, the defendant Brown having no property. Thereupon, an execution against the person of Brown was issued at the instance of the plaintiff, which was returned *non est inventus,* and then the plaintiff brought an action to spring term, 1883, of said court, against the defendant petition-

ers upon their undertaking as bail; and in this action, and at that term, the plaintiff filed her complaint alleging the grounds of liability of the defendants, and demanding judgment for the sum of $800, to be discharged upon payment of the $504 and interest and costs. On Wednesday of the second week of that term, the plaintiff moved for and obtained a judgment final against the defendant Gatling for the sum of $733.32, with interest on $504, and for costs.

The defendant Miller had filed an answer, but the plaintiff moved for judgment against him because the same was frivolous and false in fact, and raised no substantial defence to the merits of the action, and the court so held, but granted leave to this defendant to withdraw the answer and file another on or before the afternoon of Saturday, the last day of the term.

The judge left the court before the end of the term, but on the evening of the last day thereof the counsel for the plaintiff sent the papers in the case (including the answer filed by Miller in pursuance of the leave granted, and also an answer in substance the same for the defendant Gatling) to the judge, with a motion for judgment because the answers were frivolous and false in fact, and raised no substantial defence to the merits of the action. It was stipulated that the judgment should be entered as of the term mentioned, and that the parties might appeal, if they should so desire, after the judge returned the papers and the judgment, but the time within which the appeal might be taken was not then settled.

The judge received the papers and adjudged that the defendants had filed no answers "raising any defence to the merits of the action" and gave judgment against them "for $733.32, with interest on $504 from the 2d of April, 1883, and for $9.00 former costs, and for costs of this action to be taxed by the clerk of the court;" and made this further order: "By agreement of counsel in the presence of the court, it is ordered that the defendants may have until the 10th of June to file a case of appeal if they desire. Bond for costs fixed at $30."

The papers, including the judgment, were returned by the judge to the counsel of the plaintiff, who, on the 14th of May, 1883, caused them to be placed in the clerk's office, and the judgment to be docketed in the counties of Orange and Wake.

On the 11th of June next thereafter an execution issued upon the judgment to the sheriff of Orange, and on or about the 3d of July following, the defendant petitioners brought an action against the said Roulhac and the clerk of said court and the sheriff of the county, and moved before a judge at chambers for an injunction restraining the collection of said execution, and for on order directing the clerk to accept an undertaking on appeal from said judgment, and to allow them to take an appeal to this court. And on the 17th of July next thereafter, the judge, having before him substantially the same evidence that appears to this court now, denied the motion and gave judgment for costs against the plaintiffs in that action.

The petitioners had two attorneys in the action in which judgment was given, of whom they complain. It appears from their affidavits that one of them called upon the clerk about the 7th of May last and inquired whether the judge had returned the papers and judgment, and the clerk replied that he had not; and on the next day he made like inquiry and received like reply. This attorney then asked permission to examine for the papers, which was granted; he made search, but could not find them; he was especially anxious to appeal for the defendant Miller. The counsel for the defendant Gatling called repeatedly on the clerk and made similar inquiries of him and received like replies; he called only three or four days before the execution issued and received like information, and he too got permission to make a search for the papers, but could not find them; he called twice, specially, between the 13th and 30th of May, and the clerk uniformly made the like reply.

Both of the counsel swear positively that they made repeated and earnest inquiries of the clerk about the papers and judgment, and up to within a few days of the 10th of June, and

he uniformly told them that the judge "had not been heard from"; and that they desired to appeal to this court.

The affidavit of the clerk seems to be made with scrupulous care. It does not in any material respect contradict the affidavits of the said counsel. What the clerk states is his best recollection and what appears on the docket, and in several respects he confirms the statements of the counsel; he says that one of the counsel "did come several times and ask if the judgment had been returned; that being busy writing, he referred him to the papers, but he has no recollection of the time at which he made inquiries"; that about the week before the execution issued "the papers were all put together and the judgment thought of"; he says it appears on the records in his office that the judgment was docketed on the 14h of May, 1883, and he is confident that no inquiry was made after that time by counsel, and that a search of the docket would have showed the judgment; that he had no design to mislead the counsel or the defendants; the papers lay upon his desk for some time; the contents "not thought of or recollected."

Another affiant swears that, by instructions, he placed the papers in the office of the clerk on the 14th of May, 1883, and had the judgment docketed and filed among the papers.

*Messrs. Graham & Ruffin,* for plaintiff.
*Messrs. Gatling & Whitaker,* for defendants.

MERRIMON, J., after stating the above. Upon this state of facts we think the petitioners are entitled to the writ of *certiorari.* It is very manifest they desired and intended to appeal from the judgment from the beginning. It was agreed, at the time it was stipulated that the judgment might be entered as of the term of the court, though it was, in fact, to be given after the term, that the party against whom judgment should be given might appeal. The counsel for the petitioners in that action swear that they intended to appeal, and it appears they were

vigilant and earnest in their efforts to learn when the judgment was entered, with the view to appeal. Indeed, we can scarcely see how they could do much more than they did. It could not be expected that they would communicate with the judge on the subject. The clerk was the proper person to have charge of the papers and the judgment, and to·him were all inquiries about them properly addressed. He ought to have known when they came into his office, and been able to give all proper information about them. It seems, however, that he was not advertent to their presence in his office for some considerable time, and repeatedly told the counsel applying for information about them, that the judge "had not been heard from," and he did this, as the counsel swear, a few days before the time expired within which the appeal might be taken.

It is true the clerk says he feels confident that the counsel did not call upon him for information after the 14th of May, but he does not say positively that they did not. Indeed, he says he could not say at what time he called, and it appears that he relied largely for his recollection and information upon the entries on the docket. His affidavit is not positive, and he frankly says he relies, in several respects, upon the docket-entries.

The counsel do not say they examined the docket-entries; they say they called for the papers and searched for, but could not find them. This was sufficient. It is customary to call for and examine the papers. Under the circumstances of this case, it was sufficient if the counsel called upon the clerk, and he told them that the judge had not been heard from. It was not his duty to know of the presence of the papers and the judgment, and to give information about them. There are cases in which counsel ought to examine the records for information, but in a case like this, it is sufficient to call upon the clerk. The object was merely to get notice of a fact known to the clerk.

Where a party intending to appeal in apt time has not been in default himself, and has been reasonably diligent in his efforts to appeal, in the course of procedure, but failed to do so because

of the inadvertence, mistake or lack of information of the clerk, as in this case, the writ of *certiorari* as a substitute for an appeal will be granted. *Murray* v. *Shanklin*, 4 Dev. & Bat., 276; *Howerton* v. *Henderson*, 86 N. C., 718; *Parker* v. *Railroad*, 84 N. C., 118; *Syme* v. *Broughton*, *Ib.*, 114.

It was insisted in the argument, that the denial of the motion for an injunction ought to be conclusive of the whole matter assigned as ground for this application. We do not think so. That motion was made in a separate and distinct action from that in which the petitioners desired to appeal, and the judge had no authority to correct errors or irregularities in the latter; nor had he authority to exercise his powers of discretion to set aside the judgment for "mistake, inadvertence or excusable neglect." Indeed, the purpose of the application seems to have been an ill-advised effort to enable the present petitioners to appeal from the judgment complained of. The judge simply denied the motion for an injunction, without assigning any of the grounds of his decision. He may have thought the defendants in the judgment complained of ought to have moved before him in the action wherein it was granted, to set it aside for some sufficient and properly assigned cause, or, that their remedy was the application they are now making. But in any view of the matter, his action was not conclusive. *Parker* v. *Bledsoe*, 87 N. C., 221; *Grant* v. *Moore*, 88 N. C., 77.

In such an application as the present one, it ought to appear that there was apparent or reasonable ground for the appeal that was lost, and that the purpose was not simply to delay, harass or annoy the party obtaining the judgment from which it was intended to appeal. But it need not appear that the party deprived of the appeal had cause therefor that would certainly avail him in this court if his case should come before it, as upon appeal, and errors being properly assigned. Such a course of practice, if allowed, would practically result in deciding the question at issue in an action, upon errors assigned in an application for the writ of *certiorari*—a collateral proceeding. It is

ROULHAC *v.* MILLER.

sufficient if it appear that there was reasonable ground for appeal; that the purpose is not vexatious.

The petitioners insist that the judgment of which they complain ought to have been for the penalty of the undertaking ($800), and an inquiry directed as to the damages the plaintiff had sustained; that the damages are not necessarily the plaintiff's whole debt; and they further insist that, at all events, the judgment is irregular, in that, it ought not to have been final. We are not prepared to say that these suggestions of error are trivial and not fit to be considered, if properly assigned and brought before us. They raise questions that admit of much plausible debate, as we learned in the able arguments of counsel upon this application. We do not think it proper to decide them now; indeed they are not presented for our decision further than to enable us to see that there was some reasonable ground for the appeal.

The defendants had the right to appeal, and lost it by no inexcusable default or negligence of their own, and they are entitled to bring their case before this court by the writ of *certiorari. Howerton* v. *Henderson, supra; Wynne* v. *Prairie,* 86 N. C., 73; *Rogers* v. *Moore,* 86 N. C., 85; *Williams* v. *Rockwell,* 64 N. C., 325.

The prayer of the petitioners is granted, but they must give the undertaking required by the superior court upon appeal, and a *supersedeas* bond according to law, if they desire to stay the execution upon the judgment for the debt. Let the writ of *certiorari* issue accordingly.

PER CURIAM.                          Motion allowed.